DENNIS GUILMARTIN, Appellant, *v.* THE SOLVAY PROCESS COMPANY, Respondent.

1. NEGLIGENCE — EMPLOYERS' LIABILITY ACT — DETAIL OF THE WORK. In an action brought under the Employers' Liability Act (L. 1902, ch. 600) by an oiler who was injured while repairing machinery under the direction of a shift foreman by the alleged negligence of the latter in failing to stop the engine, if such failure was negligent, the fact that it was negligence in a mere detail of the foreman's work will not relieve the master from liability where the foreman acted as superintendent and his failure to stop the engine was an act of superintendence.

2. ASSUMPTION OF RISK. The question whether or not an employee assumes a risk is, under the statute, primarily for the jury.

*Guilmartin* v. *Solvay Process Co.*, 115 App. Div. 794, reversed.

(Argued October 24, 1907; decided November 19, 1907.)

APPEAL from an order of the Appellate Division of the Supreme Court in the fourth judicial department, entered November 23, 1906, which reversed a judgment in favor of plaintiff entered upon a verdict and an order denying a motion for a new trial and granted a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*A. Lee Olmsted* for appellant.  The defendant's foreman, Michael Mullin, was a person whose sole or principal duty was that of superintendence, and was exercising superintendence with the knowledge and consent of the defendant, within the meaning of the Employers' Liability Act.  (*Faith* v. *N. Y. C. R. R. Co.*, 109 App. Div. 222; *McBride* v. *N. Y. T. Co.*, 101 App. Div. 448.)  The failure of Mullin to order the engine to be shut down was an act of superintendence.  (*Harris* v. *B. M. & E. Works*, 188 N. Y. 141; *Gmaehle* v. *Rosenberg*, 178 N. Y. 148; *McHugh* v. *M. R. Co.*, 179 N. Y. 378; *Crispin* v. *Babbitt*, 81 N. Y. 518; *McCosker* v. *L. I. R. R. Co.*, 84 N. Y. 77; *O'Brien* v. *Look*, 171 Mass. 36; *Meagher* v. *C. L. M. Co.*, 187 Mass. 586; *Roach* v. *L. B. Co.*, 181 Mass. 480; *McPhee* v. *N. E. C. Co.*, 188 Mass. 141; *Bellgrade* v. *U. B. & P. Co.*, 90 App. Div. 577; 181 N. Y. 519.)  The negligent decision of Mullin to attempt to extricate the belt without shutting down the engine did not relate to a mere detail of the work.  (*Carlson* v. *N. E. C. Co.*, 113 App. Div. 371.)  It was negligence on the part of Mullin to attempt to extricate the belt from its entanglement without stopping the revolution of the shaft and pulley upon which it was entangled.  (*Faith* v. *N. Y. C. R. R. Co.*, 109 App. Div. 222; 185 N. Y. 556; *Braunberg* v. *Solomon*, 102 App. Div. 330; *McHugh* v. *M. Ry. Co.*, 179 N. Y. 378; *McBride* v. *N. Y. T. Co.*, 101 App. Div. 448; *Carlson* v. *N. E. C. Co.*, 113 App. Div. 371.)  Plaintiff, by continuing at work upon the platform, did not assume the risk of the belt catching him.  (*Koran* v. *N. C. & C. Co.*, 82 App. Div. 527; 179 N. Y. 552; *Owens* v.

*Ernest*, 1 Misc. Rep. 388 ; *Hawley* v. *N. C. Ry. Co.*, 82 N. Y. 370 ; *Smith* v. *King*, 74 App. Div. 1 ; *Floetti* v. *J. E. Co.*, 10 App. Div. 308 ; 19 App. Div. 136 ; *Davidson* v. *Cornell*, 132 N. Y. 228 ; *Jarvis* v. *N. N. Y. M. Co.*, 55 App. Div. 272 ; *Eastland* v. *Clark*, 165 N. Y. 420 ; *Faith* v. *N. Y. C. & H. R. R. R. Co*, 109 App. Div. 227.)

*Louis L. Waters* for respondent. The foreman, by actually participating as a laborer in the work of extricating the belt in which plaintiff was injured, became and was a co-employee of plaintiff, and was not a person exercising superintendence, and his acts and directions in and about the matter were not acts of superintendence. (*Cashman* v. *Chase*, 156 Mass. 342 ; *Brittain* v. *W. E. St. R. Co.*, 168 Mass. 10 ; *Riou* v. *R. G. Co.*, 171 Mass. 162 ; *Flynn* v. *B. E. L. Co.*, 171 Mass. 395 ; *Joseph* v. *Whitney Co.*, 177 Mass. 176 ; *Hoffman* v. *Holt*, 186 Mass. 572 ; *Whitaker* v. *Bent*, 167 Mass. 588 ; *Quinlan* v. *L. S. Co.*, 107 App. Div. 180 ; *Dolan* v. *H. H. M. S. Co.*, 105 App. Div. 366 ; *Foster* v. *I. P. Co.*, 183 N. Y. 50.) The accident was extraordinary and defendant was not bound to anticipate or provide against the happening of such accident. It could not have been reasonably anticipated and defendant is not liable for it. (*Fasani* v. *N. Y. C. & H. R. R. R. Co.*, 109 App. Div. 404 ; *Dougan* v. *C. T. Co.*, 56 N. Y. 1 ; *Cleveland* v. *N. J. S. Co.*, 68 N. Y. 306 ; *Crocheron* v. *N. S. & S. I. F. Co.*, 56 N. Y. 656.) The danger from the severed belt and revolving shaft was obvious and great, and was as open, obvious and apparent to the plaintiff as to defendant, and plaintiff, as matter of law, assumed the risk. (*Dillon* v. *N. C. T. Co.*, 181 N. Y. 215 ; *Wells* v. *Celluloid Co.*, 175 N. Y. 404.)

CULLEN, Ch. J. This action is brought under the Employers' Liability Act (Laws 1902, Chap. 600), servant against master, to recover damages for personal injuries. The defendant was engaged in the manufacture of soda ash and similar products. The plaintiff had been in defendant's

employ for a number of years, and for the last portion of the time his duty was to oil the machinery. At the time of the accident a belt in defendant's factory, running from the main shaft to a counter shaft, had become so loose as to wind around the pulley on the shaft. The belt seems to have been stronger than the attachment of the pulley to the shaft, and after it had been drawn as taut as possible from the counter shaft the pulley commenced to revolve on the shaft. To remedy this condition of the machinery it was necessary to loosen the belt. One Mullin was the foreman of the shift or gang to which the plaintiff belonged. Mullin had power to stop the machinery in case of accident or emergency. On being informed of the accident he had the movement of the engine slowed to a certain extent, but did not have it stopped, and then directed the plaintiff, with other workmen, to cut the lacing of the belt, he personally joining in the work. After the belt was cut he directed one of the workmen to throw the loose end on the floor. The shaft pulley being relieved from the strain of the taut belt, again revolved with the shaft and commenced to wind up the belt, the loose end of which struck the plaintiff. He was drawn over the shaft and received injuries which resulted in the loss of his leg. Two questions were submitted to the jury: *First*, whether Mullin was a person whose sole or principal duty was that of superintendence; *second*, whether it was negligent not to stop the machinery when the plaintiff was put at work to repair the injury to the belt and pulley. The jury found a verdict for the plaintiff. A motion for a new trial was made and denied. From the order denying that motion and the judgment entered on the verdict an appeal was taken, and both were reversed by the Appellate Division by a divided court and a new trial granted.

The order of reversal states that it was made solely on questions of law, the facts having been examined and no error found therein, and, hence, an appeal from the order lies to this court. The ground on which the Appellate Division placed its decision was that the negligence of Mullin in fail-

ing to stop the engine, if negligence it was, was the negligence of a fellow-servant in a detail of the work for which, under the decisions in *Crispin* v. *Babbitt* (81 N. Y. 516), *McCosker* v. *Long Island Railroad Co.* (84 N. Y. 77) and *Foster* v. *International Paper Company* (183 N. Y. 50), the master was not liable, and that, therefore, the defendant's motion to dismiss the complaint made at the close of the evidence should have been granted. We deem this view of the Appellate Division erroneous. The two earlier cases cited by the court below arose before the enactment of the Employers' Liability Act. If the accident in the third case occurred after the enactment of that statute the action was not brought under that act. Therefore, the decision in none of the cases disposes of the present case, which is substantially controlled by our recent decision in *McHugh* v. *Manhattan Railway Company* (179 N. Y. 378) and *Harris* v. *Baltimore Machine & Elevator Works* (188 N. Y. 141), which were based on the Employers' Liability Act. That statute, as said by Judge Gray in the later case, "gave an additional cause of action; because it prescribed that a master shall be liable for the negligence of the superintendent or the person acting as such. At common law such a liability was not recognized; unless the superintending servant was the *alter ego* of the master with respect to the work." To render the master liable the negligence must not only be on the part of the person who is acting as superintendent, but also in an act of superintendence. But if the act be of that character the fact that in a sense it is a detail of the work will not relieve the master from liability. In the prosecution of many, if not most, works, superintendence is a detail of the work, in the accurate use of that term. It is often so denominated in the older cases and properly so, because before the statute it was unnecessary to distinguish between negligence of a superintendent and that of a co-laborer of the same grade as that of the person injured so far as any liability of the master was involved. The statute has changed this. In the *McHugh* case the defendant was held liable for the negli-

gence of a train dispatcher in starting a train. The dispatcher performed that act, doubtless, scores of times a day, and its performance was a mere detail of his ordinary day's work. Therefore, the question in any case brought under the statute is not whether the negligent act is a detail of the work, but whether it is a detail of the superintendent's part of the work, or of that of the subordinate employees and servants. In the present case had the foreman, Mullin, attempted to stop the engine himself and so carelessly done the work as to cause injury to other employees, that might very well be deemed the negligence of a co-servant for which the master would not be liable; but the determination of the question whether the machinery should be stopped before the men were put to work on it was of a very different character. None of the other workmen could direct the engine to be stopped. Mullin alone had that power. His direction in reference thereto, or failure to direct, was an act of superintendence. At least, the jury was authorized to so find.

It is contended by the counsel for the respondent that the failure to stop the engine was not a negligent act and that the accident which occurred was one which could not have been anticipated or foreseen. It requires nothing more than a perusal of the numerous accident cases found in the reports of this court to show that working on moving machinery involves great danger of personal injury. While it is true that the particular manner in which this accident occurred is quite exceptional, it is equally true that the jury was authorized to find that the work was inherently dangerous and involved liability to accident of some kind. There was evidence tending to show that stopping the machinery at the particular time would involve injury to the plant and product. This might justify a failure to stop the engine, but the evidence on the subject simply presented a question of fact for determination by the jury. The objection that the plaintiff assumed the risk is answered by the provision of the statute, which enacts : " The question whether the employee understood and assumed the risk of such injury, or was guilty of contributory negligence,

by his continuance in the same place and course of employ-
ment with knowledge of the risk of injury shall be one of
fact, subject to the usual powers of the court in a proper case
to set aside a verdict contrary to the evidence." The Appel-
late Division might have reversed the judgment on the ground
of assumed risk, but in affirming the facts it has refused to
exercise that power.

The order of the Appellate Division should be reversed and
the judgment of the Trial Term affirmed, with costs in both
courts.

GRAY, O'BRIEN, VANN, WERNER, WILLARD BARTLETT and
CHASE, JJ., concur.

Ordered accordingly.