AMERICAN MFG. CO. v. BIGELOW.

(Circuit Court of Appeals, Second Circuit. May 8, 1911.)

No. 228.

**1. MASTER AND SERVANT (§ 284*)—ACTION FOR INJURY TO SERVANT—QUESTIONS FOR JURY.**

An action by an employé against the master to recover for a personal injury was properly submitted to the jury where the testimony as to the material facts was in direct conflict; the question of preponderance being for the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1000–1132; Dec. Dig. § 284.*]

**2. MASTER AND SERVANT (§ 267*)—ACTION FOR INJURY TO SERVANT.**

In an action for an injury to plaintiff caused by the starting up of a loom which she had stopped while cleaning it, a motion to strike out her testimony that defendant's superintendent started up the machine was properly overruled, although she admitted that she did not see him move the lever which started the machine, where she stated that she did see him standing by it, and that no one else was near.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 911; Dec. Dig. § 267.*]

**3. MASTER AND SERVANT (§ 180½*)—MASTER'S LIABILITY FOR INJURY TO SERVANT—"ACT OF SUPERINTENDENCE."**

The action of the superintendent of a factory in starting up a loom which the operator had stopped for the purpose of cleaning it was an act of superintendence for which his principal was responsible to the operator, who was injured thereby under New York Employer's Liability Act (Consol. Laws N. Y. 1909, c. 31) § 200.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 180½.*]

**4. APPEAL AND ERROR (§ 1050*)—REVIEW—HARMLESS ERROR—ADMISSION OF EVIDENCE.**

Where the only prejudice which could have resulted from the admission of immaterial testimony was possibly to increase the amount of damages awarded to plaintiff, the reduction of the verdict by the court to a sum clearly reasonable sufficiently corrected the error to remove any ground for reversal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4154; Dec. Dig. § 1050.*]

**5. EVIDENCE (§ 123*)—COMPETENCY—RES GESTÆ.**

Where plaintiff was injured by the starting up of a loom which she was operating in defendant's factory, and which she had stopped and was cleaning, a statement made by defendant's superintendent while carrying plaintiff from the room immediately after the injury in answer to her charge that he had caused it was admissible as a part of the res gestæ.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 351–368; Dec. Dig. § 123.*]

In Error to the Circuit Court of the United States for the Eastern District of New York.

Action at law by Clara Bigelow against the American Manufacturing Company. Judgment for plaintiff, and defendant brings error. Affirmed.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

This cause comes here upon writ of error to review a judgment of the Circuit Court, Eastern District of New York, entered upon a verdict in favor of defendant in error, who was plaintiff below.

J. F. Carew and Thomas F. Magner, for plaintiff in error.

F. W. Sparks, for defendant in error.

Before LACOMBE, COXE, and WARD, Circuit Judges.

LACOMBE, Circuit Judge. [1] The action was brought under the employers' liability act (section 200 of chapter 31 of the Consolidated Laws of New York) to recover for injuries sustained from having plaintiff's fingers caught in the gear wheels of a spinning frame. The plaintiff's story was to the effect that she was a "back-tender" at the frame in question, and was on her knees at the back of the machine cleaning it from fluff and dirt, an operation which was performed every Wednesday; that the machine had been stopped or "doffed" to enable her to do so, a rule of the company forbidding all employés from cleaning or repairing machinery when in motion. When stopped, it could be started only by moving a bar at the front of the machine. While thus employed, the superintendent, Devine, came along, let out an oath, and wanted to know what it was laying off for. She replied that she was cleaning it, whereupon he mumbled something about getting back to work and walked around to the front of the machine, which thereupon immediately started up; Devine at the time being the only person in front of the machine and near enough to it to move the starting bar. Defendant's story was that Devine did not pass or speak to plaintiff while she was cleaning, but was himself busy, also on his knees, making some repairs to another machine which was located immediately in front of plaintiff's; that he did not start her machine, but stopped it as soon as he heard her scream; that when she began cleaning her machine was running and continued to run until the accident happened. Since there was evidence in support of each of the stories, there was manifestly no error in denying defendant's motion at the close of the case to direct a verdict in its favor on the ground that "the overwhelming preponderance of evidence (was) in favor of defendant." It was for the jury, not the court, to decide all disputed questions of fact.

[2] The next error assigned is the denial of defendant's motion to strike out all the testimony given by plaintiff "as to the way the machine started up, by Devine starting it up" as "purely speculative on her part." She had stated when first giving her narrative of what took place that Devine "turned it on," but later she stated that she did not see him actually start it, did not see his hand on the bar, but that, after the brief conversation with him, he mumbled something about getting back to work and passed around to the front of the machine; that looking under the machine towards the front she could see him there. There was some obstruction to the view due to the presence of bobbins at the front end, but nevertheless she could see that he was there, and that no one else was there and the machine then started. From this she inferred that he must have started it and the jury evidently drew the same inference, a reasonable one if the facts

were as she stated them. There was no error in sending to the jury the entire evidence of plaintiff without striking out any of it on the ground stated.

[3] It is next contended that, even if Devine did start the machine, his doing so was not an act of superintendence, but was mere manual labor. Reliance is placed on Guilmartin v. Solway Process Co., 189 N. Y. 490, 82 N. E. 725. The cases are not parallel. Devine was not engaged in a manual detail of work as an incident or result of which the machine started. He, if he did what plaintiff contends he did, determined as a matter of superintendence that at that precise time that particular machine should be set going, and, having thus determined, it is immaterial whether it was actually started by the hand of a subordinate obeying his spoken order or by his own hand obeying the exercise of his own will.

[4] Error is also assigned to the refusal to strike out some testimony given by plaintiff. She had testified that immediately following her scream Devine, who, concededly, was only a few feet away, came to her and carried her to the dressing room. She then added: "When he was carrying me out, he was letting out oaths and saying I should keep quiet, and I says, if it wasn't for him I would have my fingers now. 'Well,' heosays, 'it is too late.'" The court having ruled that he would let the evidence stand, defendant's counsel said, "I except, and I ask to have it stricken out." To which the court replied: "I will reserve the ruling until I see if it has any bearing." We do not find it stated anywhere in the record that the matter was again brought to the attention of the trial judge. But, waiving any question as to whether the defendant's counsel should have brought up the subject again, we find no reversible error in the refusal to strike out. The first part of the statement, that Devine was "letting out oaths and saying she should keep quiet," was irrelevant and immaterial. Butler v. Manhattan Railway Co., 143 N. Y. 422, 38 N. E. 454, 26 L. R. A. 46, 42 Am. St. Rep. 738, a closely parallel case. It could not be sustained as part of the res gestæ because it had no reference at all to the accident. Quite likely it may have operated to induce the jury to enlarge their verdict, but since the trial judge, on motion for a new trial, reduced the verdict from $5,000 to $3,000, which is certainly not an excessive sum for the injuries sustained, we are satisfied that such reduction sufficiently corrects the error.

[5] The remaining portion of the statement, that to plaintiff's statement that his act had caused her injuries, his sole response was, "Well, it is too late now," is within the principle of res gestæ. It took place immediately after the accident, while the excitement produced by plaintiff's screams and the sight of her mangled fingers might well be supposed to be still operative. The statement manifestly referred to the accident itself. The authorities on this branch of the law of evidence are legion. In Wigmore on Evidence, § 1747, the exposition of the rule set forth in U. S. v. King (C. C.) 34 Fed. 314 (E. Dist. of New York), is cited as satisfactory. It reads:

"The declarations of an individual made at the moment of a particular occurrence, when the circumstances are such that we may assume that his mind is controlled by the event, may be received in evidence, because they

are supposed to be expressions involuntarily forced out of him by the particular event, and thus have an element of truthfulness they might otherwise not have."

It must appear that the statement "was made at a time when it was forced out as the utterance of a truth, forced out against his will, or without his will, and at a period of time so closely connected with the transaction that there has been no opportunity for subsequent reflection or determination as to what it might, or might not, be wise for him to say."

Wigmore himself (section 1749) thus states it:

"In the stress of nervous excitement the reflective faculties may be stilled and the utterance may become the unreflecting and sincere expression of one's actual impression and belief."

Whether Devine did make the statement attributed to him was disputed on the proof, but, if he did, the jury might well have found that his mind was still dominated by the excitement of the catastrophe.

The authorities cited on defendant's brief do not apply to the facts of this case. In Waldele's Case, 95 N. Y. 274, 47 Am. Rep. 41, the statement was that of the injured party, a deaf mute, made in the sign language to his brother half an hour after the accident. In Luby v. Hudson River Railroad, 17 N. Y. 131, the statement was made by the driver of the horse-drawn railroad car which caused the injuries, after he had got off the car, been arrested by a policeman and taken out of the surrounding crowd. To the policeman's inquiry he said that the reason he did not stop the car was because the brakes were out of order. Apparently his mental processes were not controlled by the nervous excitement of the event; as the Court of Appeals said "he was manifestly excusing himself and throwing the blame on his principals." In Furst v. Second Ave. R. R., 72 N. Y. 542, the statement was by the conductor of the car, after the accident, that "if the driver had been looking he would not have run over the child." But the conductor was on the rear platform where he could not see the boy nor the driver, and knew nothing at all about the circumstances under which the accident happened. His guesses as to its avoidance were admissible on no conceivable theory.

There is nothing in the other assignments of error which have been argued here that calls for discussion.

The judgment is affirmed.